

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

FILED
AUG 2 6 2016

| | | |
|---|---|---|
| JOYCE RIGGS AND ALFRED RIGGS, | ) | CIV. NO: 16-5077 |
| Plaintiffs, | ) | |
| v. | ) | COMPLAINT AND JURY TRIAL DEMAND |
| BENNETT COUNTY HOSPITAL AND NURSING HOME, | ) | |
| Defendant. | ) | |

Plaintiffs for their Complaint against Defendant state as follows:

SUMMARY OF THE CASE

This lawsuit is brought pursuant to 42 USC Ch. 126 titled "Equal Opportunity for Individuals with Disabilities" more commonly known as the Americans with Disabilities Act of 1990 (ADA) including changes made by the ADA Amendments Act of 2008, 42 U.S.C. § 12201 *et seq.*, which became effective on January 1, 2009. It is also brought pursuant to SDCL Ch. 20-13[1] and South Dakota common law. Joyce Riggs alleges that defendant discriminated against her because of her disability, and subsequently retaliated against her for seeking to enforce her rights. Alfred Riggs alleges that defendant terminated his employment as a means of further retaliating against Joyce Riggs and also as a means of retaliating against Alfred for aiding and encouraging Joyce Riggs in exercising her rights protected by the ADA and SDCL Ch. 20-13.

---

[1] This Complaint may be amended in the future to add additional claims. There are two claims currently pending on appeal from the South Dakota Division of Human Rights to the South Dakota Circuit Court for the Sixth Circuit, Hughes County. Those state law claims may be added to this Complaint after administrative procedures have been exhausted.

1019639 / 12344.0003

1

JURISDICTION

This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because some of the counts in the Complaint arise under federal law, the ADA as amended. The Court has supplemental jurisdiction to adjudicate state law claims contained in the Complaint pursuant to 28 U.S.C. § 1367(a).

Venue is appropriate in the United States District Court, District of South Dakota, Western Division, because defendant's principal place of business is located in this district, and because the events or omissions giving rise to claims in the Complaint occurred in this district. 28 U.S.C. § 1391(b).

PARTIES

1. Plaintiff Joyce Riggs was formerly an "employee" of the defendant as that term is defined in 42 U.S.C. § 12111(4). She was a "qualified individual" as she possessed the appropriate educational background, employment experience, skills, etc., for the position. She was able to perform the essential functions of her position with or without reasonable accommodations. 42 U.S.C. § 12111(8).

2. Plaintiff Alfred Riggs was also formerly an "employee" of the defendant as that term is defined in 42 U.S.C. § 12111(4).

3. Defendant is a "covered entity" as that term is defined in 42 U.S.C. § 12111(2). Defendant was also plaintiffs' former "employer" as that term is defined in 42 U.S.C. § 12111(5). Defendant's principal place of business is located in the City of Martin, South Dakota.

FACTS

4. Joyce Riggs began working for Bennett County Hospital & Nursing Home ("BCH") in 2006.

5. At all times relevant to this Complaint, Joyce was working as Central Supply Technician.

6. Joyce's immediate supervisor was Katie Dillon.

7. Ethel Martin also known as Ethel Frein (Martin) began working at BCH in 1999. She was subsequently promoted to CEO in 2012.

8. Alfred Riggs began working with BCH in 2007. He was defendant's Ambulance Director.

9. Joyce Riggs also performed duties for the BCH ambulance service. When she was performing those services Alfred Riggs was Joyce's immediate supervisor.

10. For several years prior to Martin assuming the CEO position, Joyce Riggs and other BCH employees brought their pets (primarily dogs) to the workplace.

11. When Martin assumed the CEO position in August, 2012, she did not approve of dogs being permitted to run loose throughout the facility.

12. In September 2012, BCH adopted a "pet policy."

13. Due to the manner in which Martin enforced the pet policy, it was impractical for Joyce Riggs to continue bringing her dogs to the workplace.

14. Joyce Riggs' father and several close relatives passed away in 2012.

15. In approximately October 2012 Joyce approached Martin requesting permission to bring her dog with her to her workplace to help her deal with depression due to the family members' deaths.

16. In November 2012 Joyce objected to BCH rehiring an employee who had previously been fired and who had previously sexually harassed her and was doing it again.

17. When she complained about this employee she was suspended for the remainder of the day and the following day.

18. Following her suspension, Joyce Riggs attempted suicide.

19. While in treatment following her suicide attempt, Joyce Riggs learned she was suffering from post traumatic stress disorder (PTSD).

20. When she returned to work in mid-December, 2012 she once again asked Martin for permission to bring her dog with her to the workplace.

21. Martin told Joyce she could bring her dog to the nursing home on weekends if she scheduled it with the Activities Director.

22. Joyce told Martin that wouldn't work - - that she needed her dog with her daily.

23. During the years 2013, 2014 and up to October 2015, Joyce periodically requested permission to bring her dog with her to work. Her requests were repeatedly denied.

24. Martin was the person who prepared the agendas for meetings of BCH's Board of Directors.

25. During 2013 through 2015, Joyce asked to be placed on the Board's agenda so that she could discuss bringing her dog to work.

26. Martin did not place Joyce on the Board's agenda following her requests.

27. Sometime in late October or early November 2014 Martin took leave from employment for medical purposes.

28. While Martin was on medical leave, Joyce made a request to Dillon, her immediate supervisor, for permission to bring her "service dog" with her to work.

29. Dillon emailed Judy Soderli, BCH's CFO, to giver her a "heads-up" that Joyce Riggs was "on a roll again about the dog."

30. Dillon told Soderli that Joyce was "all tuned up" and that Joyce's Dr./Therapist recommended she be able to bring the dog to work.

31. Martin advised Soderli that Martin would need to research the situation before making any statement.

32. Soderli phoned Martin and conveyed Dillon's statements.

33. Martin advised Soderli to have Dillon tell Joyce that the current pet policy would remain in effect until BCH's policies could be reviewed to determine whether revision was necessary under the circumstances.

34. Martin reviewed BCH's policies and found no policy regarding a request for accommodation or service animals on the premises.

35. Martin also checked Joyce Riggs' personnel file in order to discover whether she had past performance issues at work.

36. Martin found that the most recent event involving Joyce Riggs' performance was in November 2012.

37. Martin discovered that at that time (November 2012) Joyce took leave for medical reasons (attempted suicide). Upon return, Joyce advised that she was on anti-depressant medications and that the dosage was being adjusted.

38. On or about November 6, 2014, Martin asked Dillon to ask Joyce whether Joyce was requesting a reasonable accommodation.

39. On that date, Martin told Dillon to tell Joyce that BCH did not have policies in place but that they were working on them. They believed the process could take some time. They asked Joyce to abide by the pet policy that was currently in place.

40. On or about December 2, 2014 Martin returned to work following her medical leave of absence.

41. On or about December 2, 2014 Martin met with Joyce Riggs and asked her how Joyce could function on the ambulance crew when working in the office appeared to be to stressful.

42. At that meeting Martin also expressed concern regarding what would be done with Joyce's dog if Joyce was required to respond to an ambulance call.

43. On December 5, 2014 Joyce was provided with a copy of BCH's Reasonable Accommodations Policy #RA 1 along with a Medical Inquiry Form in Response to an Accommodation Request.

44. On January 5, 2015, Dr. Lyle Christopherson completed the Medical Inquiry Form in Response to an Accommodation Request.

45. Dr. Christopherson stated that Joyce Riggs was a person with a disability. He stated she had a physical or mental impairment and that impairment was substantially limiting. It stated that Joyce needed a "companion dog" as an accommodation.

46. The more Joyce requested accommodation and it was refused, she became increasingly frustrated and her anxiety level increased.

47. At one point, Martin told Joyce she was pathetic and that she should grow up.

48. On January 13, 2015 Alfred Riggs delivered Joyce Riggs' Reasonable Accommodation Request together with the Medical Inquiry Form to Martin.

49. On or about January 14, 2015 Martin spoke with Joyce Riggs, informed her that she had received the Accommodation Request and said she would try to meet with the Reasonable Accommodations Committee meeting in the next week.

50. In response, Joyce Riggs told Martin that Alfred Riggs, a member of the Board of Directors, and both Directors of Nursing should also attend that committee Martin said that would not be necessary.

51. On January 21, 2015, the Reasonable Accommodations Committee, composed of Martin, Judy Soderli (CFO), and Katie Dillon (Joyce's immediate supervisor), met to consider Joyce's Accommodation Request.

52. Joyce Riggs was not invited to participate in the meeting with the Reasonable Accommodations Committee. Nor were any of the other individuals whom Joyce suggested should participate invited.

53. The Reasonable Accommodations Committee reviewed Joyce's job description, her two most recent performance evaluations, her attendance record, considered whether she had received any verbal or written warnings over the past year, considered whether there were any concerns or complaints which Joyce had made to her supervisor concerning her ability to perform her duties, and considered the information provided by Dr. Christopherson.

54. The Committee found that there were no significant changes in her duties over the past year, her performance evaluations showed improvements, her attendance record was very good, she received no verbal or written warnings regarding her performance over the past year, and she had not mentioned any specific stressors.

55. Martin asked the other members of the Reasonable Accommodations Committee whether they wanted to permit Joyce Riggs to bring her dog to work. Soderli responded "This is a place of business, not a place to bring our pets." Dillon responded that she did not want to be stuck watching the dog when Joyce went out on ambulance calls, and that she did not want to clean up after the dog.

56. None of the members of the Reasonable Accommodations Committee have expertise in the field of mental health, psychiatry, psychology, depression, PTSD or how service animals may assist disabled individuals in the workplace.

57. BCH did not demonstrate any effort whatsoever to engage in an interactive process to find a workable accommodation or to discuss concerns and resolve issues in an effort to find a reasonable accommodation.

58. On January 28, 2015, the Reasonable Accommodations Committee provided Joyce with its written denial of her request for reasonable accommodation.

59. On January 28, 2015, Joyce Riggs spoke with Katie Dillon, her immediate supervisor, regarding the committee's decision.

60. During their meeting, Joyce informed Dillon that she disagreed with the decision.

61. Joyce and Dillon discussed the hospital's grievance policy. Joyce understood that Dillon considered Joyce's disagreement with the committee's decision to be her grievance or an appeal from the committee's decision.

62. Because Joyce perceived no action being taken with respect to her grievance/appeal, Joyce appeared at a meeting of the Board of Directors on February 26, 2015 requesting the board to overrule the committee's decision and to allow Joyce to have her service animal accompany her at work.

63. The board rejected Joyce's request and advised her to use the hospital's grievance policy instead.

64. In an effort to follow the board's instructions, Joyce spent the weekend preparing her grievance/appeal pursuant to BCH policy.

65. On March 2, 2015 at approximately 6:00 a.m., Joyce placed a copy of her hand-written grievance/appeal in Martin's office and in Dillon's office.

66. On March 2, 2015, Alfred Riggs delivered copies of Joyce's grievance/appeal to the board members.

67. Later that morning, Dillon arrived at work. Dillon reviewed Joyce's grievance/appeal and went to Martin's office.

68. Later, Martin and Dillon came to Joyce Riggs and terminated her employment.

69. BCH stated the reason for Joyce's termination was continuing insubordination towards administration, failure to follow facility policy, and her attempts to polarize staff against management through misrepresentation of facts.

70. Immediately after being fired, Joyce required medical care. She needed to stay at the clinic until it was safe for her to go home - - both physically and mentally.

71. On March 11, 2015, Joyce Riggs signed a Charge of Discrimination alleging that BCH failed to accommodate her disability, and that it fired her in retaliation for seeking to enforce her rights under the ADA and the South Dakota Human Relations Act.

72. Also on March 11, 2015, Alfred Riggs delivered to Martin an envelope which contained an appeal of Joyce's termination.

73. Also on March 11, 2015, Alfred Riggs sent an email to Martin asking her to reconsider her decision refusing to permit Joyce Riggs to work as an EMT.

74. On March 12, 2015, Martin informed Alfred Riggs that Martin did not believe that it was in the best interest of the facility to rehire Joyce Riggs.

75. On March 12, 2015, Joyce Riggs filed a claim seeking unemployment insurance benefits with the South Dakota Department of Labor.

76. On March 12, 2015, Joyce Riggs informed the South Dakota Department of Labor that she believed that she had been fired because she had asked Martin for permission to bring her service dog to work.

77. Shortly after Joyce filed her claim for unemployment insurance benefits, BCH filed a response stating that Joyce had been discharged due to work-related misconduct.

78. On March 18, 2015, Martin received a copy of Joyce Riggs' Charge of Discrimination which had been filed with the South Dakota Division of Human Rights.

79. After Martin received Joyce's Charge of Discrimination, Martin spoke with an investigator with the South Dakota Department of Labor regarding Joyce's unemployment insurance request.

80. Martin advised the Department of Labor that Joyce's claim that she had been fired because she requested permission to bring her service dog to work was the same reason why she filed her Charge of Discrimination with the Division of Human Rights.

81. By email dated March 18, 2015, Martin asked the BCH Board of Directors whether it wanted to place Joyce's March 11, 2015, request for reinstatement on the Board's agenda for its upcoming meeting.

82. The Board rejected Joyce's Request for Reinstatement because she had filed a Charge of Discrimination.

83. On March 19, 2015, Alfred Riggs met with Martin and Melanie Peil (BCH's Human Resources Director).

84. At the meeting on March 19, 2015, Alfred Riggs once again asked Martin to permit Joyce Riggs to continue working with the BCH Ambulance Service.

85. At the meeting March 19, 2015, Martin told Alfred Riggs she could not hire Joyce back into the most stressful department in the facility and that she did not think that would be a sound decision given the existing circumstances.

86. On March 26, 2015, the Department of Labor denied Joyce's request for unemployment insurance benefits.

87. Joyce appealed from the Department of Labor's denial of unemployment benefits.

88. At a meeting on April 7, 2015, Martin chastised Alfred Riggs because he had used a BCH ambulance to perform personal errands after transporting a patient from Martin, South Dakota to Rapid City, South Dakota. This had been a common practice prior to April 7, 2015.

89. On April 8, 2015, Martin drafted a new policy for BCH that provided ambulance staff could not use the ambulances for personal errands.

90. On April 8, 2015 the South Dakota Department of Labor issued a Notice of Hearing with respect to Joyce's unemployment insurance benefits claim.

91. On April 13, 2015, BCH sent documents to the South Dakota Department of Labor to support its claim that Joyce Riggs had been fired due to work-related misconduct.

92. In mid-April 2015, Martin began soliciting negative information from BCH employees regarding Alfred Riggs and his performance as the Ambulance Service Director.

93. On April 20, 2015, the South Dakota Department of Labor held a hearing on Joyce's appeal from its denial of her claim for unemployment insurance benefits.

94. Martin and Dillon appeared at the hearing as witnesses and testified regarding the bases for Joyce's termination - - work-related misconduct.

95. On April 28, 2015, the Department of Labor affirmed the denial of Joyce's unemployment insurance benefits claim.

96. On May 27, 2015, Martin chastised Alfred Riggs because he had failed to mention that the ambulance service was part of BCH in a newspaper interview. He was instructed to receive Martin's approval before releasing any articles, pictures, notices, etc. for publication.

97. Alfred Riggs was fired on June 2, 2015. The stated reasons for his dismissal were substandard performance, insubordination, not following proper chain of command, overstepping scope of practice, and past unauthorized use of ambulance for personal errands.

98. On July 31, 2015, the South Dakota Division of Human Rights issued a Determination of Probable Cause in favor of Joyce Riggs on both her charge of failure to accommodate and her charge of retaliatory discharge.

99. In its Determination, the DHR found that BCH's purported legitimate, non-retaliatory grounds for Joyce's dismissal were pretextual.

100. On August 3, 2015, Joyce Riggs filed a second Charge of Discrimination with the South Dakota Division of Human Rights alleging that BCH's bad faith opposition to her unemployment insurance benefits claim was another form of retaliating against her for requesting accommodation of her disability.

101. On August 3, 2015, Alfred Riggs filed a Charge of Discrimination with the South Dakota Division of Human Rights alleging that his termination was a means by which BCH further retaliated against Joyce Riggs, and that he was terminated due to his encouraging and assisting Joyce Riggs in pursuing her request for accommodation of her disability.

102. On September 16, 2015, the South Dakota Division of Human Rights administratively closed its file on Joyce's initial charge at both parties' request. By that act, Joyce Riggs exhausted her administrative remedies under South Dakota law.

103. On June 2, 2016, the U.S. Equal Employment Opportunity Commission issued a dismissal and Notice of Right to Sue with respect to Joyce Riggs' initial claim. In that document the EEOC adopted the South Dakota Division of Human Rights' findings in favor of Joyce Riggs on her charges of failure to accommodate and retaliatory discharge.

104. On December 1, 2015, the South Dakota Division of Human Rights issued a Determination of No Probable Cause with respect to Joyce Riggs' second Charge of Discrimination (retaliatory opposition to unemployment claim).

105. On August 9, 2016, the EEOC issued a Dismissal and Notice of Right to Sue with respect to Joyce's second Charge of Discrimination.

106. Joyce Riggs has exhausted all of her available administrative remedies under federal law. She is in the process of exhausting available administrative remedies under state law with respect to her second Charge of Discrimination.

107. On December 1, 2015, the South Dakota Division of Human Rights issued a Determination of No Probable Cause with respect to Alfred Riggs' Charge of Discrimination.

108. On August 9, 2016, the EEOC issued a Dismissal and Notice of Rights with respect to Alfred Riggs' Charge of Discrimination.

109. Alfred Riggs has exhausted all of his available administrative remedies under federal law. He is in the process of exhausting available administrative remedies under state law.

## COUNT ONE: FAILURE TO ACCOMMODATE

110. Joyce Riggs was a qualified individual with a disability.

111. Joyce Riggs requested accommodation of her disability.

112. BCH failed to participate in an interactive process or to use reasonable efforts to determine the appropriate accommodation for Joyce Riggs' disability.

113. Accommodating Joyce Riggs' disability would not have imposed an undue hardship on BCH.

114. Due to BCH's failure to accommodate, Joyce Riggs has suffered economic damages and is entitled to compensation in an amount to be determined by a jury.

## COUNT TWO: RETALIATORY DISCHARGE

115. Joyce Riggs was engaged in protected activity when she repeatedly requested accommodation of her disability.

116. Joyce suffered an adverse employment action when her employment was terminated.

117. BCH terminated Joyce Riggs' employment because she had repeatedly requested accommodation of her disability.

118. Due to BCH's retaliatory conduct, Joyce Riggs has suffered economic and non-economic damages and is entitled to compensation in an amount to be determined by a jury.

## COUNT THREE: RETALIATION

119. Joyce Riggs was engaged in a protected activity when she sought unemployment insurance benefits.

120. Joyce Riggs suffered an adverse employment action when BCH opposed her claim for unemployment insurance benefits in bad faith by reciting pretextual bases for her dismissal to the South Dakota Department of Labor.

121. BCH opposed Joyce's claim for unemployment insurance benefits as a means of further retaliating against her for requesting accommodation of her disability and for filing a charge with the Division of Human Rights alleging failure to accommodate and retaliatory discharge.

122.   As a result of BCH's retaliatory conduct, Joyce Riggs has suffered economic loss and is entitled to compensation in an amount to be determined by the jury.

COUNT IV:  INTENTIONAL OR RECKLESS INFLICTION OF EMOTIONAL DISTRESS

123.   BCH engaged in extreme and outrageous conduct when it repeatedly rejected Joyce Riggs' requests that BCH accommodate her disability, delaying its responses to her accommodation requests, insulting and demeaning her when she demonstrated symptoms of depression, forcing Joyce to take unnecessary action to present her requests, rejecting her requests despite medical documentation validating her claim, retaliating against her by terminating her employment, further retaliating against her by opposing her claim for unemployment insurance benefits in bad faith, and further retaliating against her by terminating her husband.  By its conduct, BCH either intentionally or recklessly caused Joyce Riggs to suffer extreme and disabling emotional distress.

124.   Due to BCH's intentional or reckless infliction of emotional distress on Joyce Riggs, she is entitled to compensation in an amount to be determined by the jury.

COUNT V: THIRD-PARTY RETALIATION

125.   Alfred Riggs was engaged in protected activity when he aided and encouraged Joyce Riggs in her efforts to exercise her rights to have accommodation for her disability.

126.   Alfred Riggs' employment was terminated by BCH as a means of further retaliating against Joyce Riggs.

127.   BCH's conduct violated Alfred Riggs' rights under 42 U.S.C. § 12203(b) and S.D.C.L. § 20-13-26.

128. As a result of BCH's unlawful retaliatory behavior, Alfred Riggs has suffered economic damages in an amount to be determined by the jury.

## COUNT VI: RETALIATION

129. Alfred Riggs was engaged in protected behavior when he assisted and encouraged Joyce Riggs in her efforts to enforce her rights guaranteed by the ADA and South Dakota Human Relations Act.

130. BCH unlawfully retaliated against Alfred Riggs when it terminated his employment because he assisted and encouraged Joyce Riggs in her efforts to enforce her rights.

131. BCH's conduct violated 42 U.S.C. § 12203(b) and S.D.C.L. § 20-13-26.

132. As a result of BCH's illegal and retaliatory behavior, Alfred Riggs has suffered economic damages in an amount to be determined by the jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the Court to issue the following relief:

A. Judgement in Joyce Riggs' favor with respect to all of her claims set forth in the Complaint;

B. Judgement in Alfred Riggs' favor with respect to all of his claims set forth in the Complaint;

C. Compensation to both plaintiffs in an amount to be determined by the jury;

D. Punitive damages in an amount to be determined by the jury;

E. The plaintiffs' costs and attorneys fees as allowed by law; and

F. Any other relief appropriate under the circumstances.

**PLAINTIFFS DEMAND TRIAL BY JURY**

Dated this 26th day of August, 2016.

                                              GUNDERSON, PALMER, NELSON
                                              &amp; ASHMORE, LLP

By: _____
      Donald P. Knudsen
      Attorney for plaintiffs
      506 Sixth Street
      PO Box 8045
      Rapid City, SD 57709-8045
      (605)342-1078
      dknudsen@gpnalaw.com

## CERTIFICATE OF SERVICE

I hereby certify on this 26th day of August, 2016, a true and correct copy of a Complaint and Jury Trial Demand was electronically filed through South Dakota's Odyssey File and Serve Portal and was served upon the following:

Michael M. Hickey
Bangs McCullen Butler Foye & Simmons LLP
P.O. Box 2670
Rapid City, SD  57709-2670

GUNDERSON, PALMER, NELSON
& ASHMORE, LLP

_____
Donald P. Knudsen